IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-323 (GJP) |
| MARK HOUCK | : | |

## ORDER

**AND NOW**, this _____ day of _____ 202__, after reviewing the submissions by the government and defense counsel, and after a hearing on this matter;

It is hereby **ORDERED** that the government's Motion is **GRANTED**, and the government shall be permitted to admit evidence in its case-in-chief that defendant, Mark Houck, committed other acts involving an assault on B.L. on May 26, 2021, because B.L. was performing acts as a provider of reproductive health services. The additional evidence is admissible to show the defendant's motive and intent in this matter, pursuant to Federal Rule of Evidence 404(b).

BY THE COURT:

_____
**THE HONORABLE GERALD J. PAPPERT**
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 22-323 (GJP) |
| MARK HOUCK | : |

### GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF OTHER CRIMES PURSUANT TO FED. R. EVID. 404(b)

The United States of America, through its attorneys, Jacqueline C. Romero, United States Attorney, Kristen Clarke, Assistant Attorney General for the Civil Rights Division, and Anita Eve and Sanjay Patel, Assistant United States Attorneys, files this Motion to Admit Evidence of Other Crimes under Federal Rule of Evidence 404(b).

WHEREFORE, for the reasons set forth in the accompanying memorandum of law in support of the government's motion, the United States of America respectfully requests that its motion be granted.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

KRISTEN CLARKE
Assistant Attorney General for the Civil Rights Division

*Anita Eve*
ANITA EVE
Assistant United States Attorney
SANJAY PATEL
Trial Attorney

Dated: December 5, 2022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-323 (GJP) |
| MARK HOUCK | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ADMIT EVIDENCE OF OTHER CRIMES PURSUANT TO FED. R. EVID. 404(b)**

The United States of America, through its attorneys, Jacqueline C. Romero, Kristen Clarke, Assistant Attorney General for the Civil Rights Division, Anita Eve, Assistant United States Attorney, and Sanjay Patel, Trial Attorney, respectfully submits this memorandum of law in support of its motion to admit evidence of other crimes under Federal Rule of Evidence 404(b).

Defendant Mark Houck is charged with assaulting a 73-year-old volunteer, B.L., on October 13, 2021 at a Planned Parenthood facility – the Elizabeth Blackwell Health Center ("PPC") – which provides women's reproductive health services in Philadelphia. The PPC is located at 1144 Locust Street in Philadelphia, PA. The PPC itself is frequently the target of organized protests and demonstrations by individuals who line the sidewalk in front of and nearby the PPC. Houck himself is a regular protestor at the PPC and is known to the victim, B.L., who has volunteered as a patient escort at PPC for over thirty years, providing patients with security and support while at the clinic and assisting patients with parking, and shielding them from protesters as the patients approach and enter the clinic, and walking patients away from the clinic to ensure their safety. While volunteering at the PPC, B.L.

routinely wore a brightly colored vest that clearly identified him as a PPC volunteer patient escort.

In fact, it was at the PPC that the victim first met Houck, who had been a regular protestor at the clinic over a period of years. In the victim's experience, Houck was a "provocateur," who frequently approached patients and attempted to direct the patients away from the PPC to a nearby anti-abortion counseling facility. Moreover, Houck had assaulted the victim before the charged incident while B.L. was volunteering to assist patients at the PPC.[1] Specifically, on May 26, 2021, Houck was also present at the PPC and confronted B.L. while B.L. was performing his duties as a volunteer provider of reproductive health services at the PPC. On both occasions, in May of 2021 and again in October of 2021, the October 2021 occasions charged in this case, Houck was motivated by his intent to injure, intimidate, and interfere with B.L. because B.L. was assisting patients in obtaining reproductive services. During the investigation of this matter and as discussed further below, the defendant has claimed or suggested that he had another other reason for assaulting B.L. The government anticipates that Houck will similarly attempt to mislead the jury at trial.

Under Federal Rule of Evidence 404(b), the evidence pertaining to Houck's earlier attack on B.L.in May of 2021 is admissible to show Houck's genuine intent and motive, as well as refute alternative explanation for the assault on B.L.

I.     **INDICTMENT**

Defendant Mark Houck stands before this court charged in an indictment with

---

1 On both occasions, B.L. wore the brightly colored vest that identified him as a PPC volunteer patient escort.

violating the Freedom of Access to Clinic Entrances Act (FACE Act), 18 U.S.C. § 248(a)(1) (Counts One and Two). The charges arise out of two assaults that occurred at the PPC on October 13, 2021. According to the indictment, the defendant used force against B.L. to injure, intimidate, and interfere with B.L. because B.L. was a provider of reproductive health services. Count One of the indictment alleges that the defendant initially shoved B.L. to the ground as B.L. attempted to escort two PPC patients from the clinic. Count Two alleges that after that assault, the defendant verbally confronted B.L. and then laid hands on the victim again, forcefully shoving B.L. to the ground in front of the PPC, causing B.L. to fall to the ground. This time, Houck caused bodily injury to B.L.

  Specifically, the assault alleged in Count One occurred when B.L. assisted two PPC patients after they had exited the Clinic and crossed 12th Street headed westbound on Locust Street. The defendant began following the patients and, when B.L. told the patients they did not have to listen to the defendant, the defendant pushed B.L., causing him to fall to the ground. Houck assaulted B.L. a second time moments later (as alleged in Count Two) after the defendant and B.L. returned to the 1100 block of Locust Street. The defendant and B.L. engaged in a verbal exchange at the corner of 12th and Locust Streets, where the defendant's teenage son was located. In the exchange of words, the defendant – in front of his son – yelled at B.L. and threatened to push B.L. into the traffic on Locust Street. The yelling captured the attention of pedestrians walking across the street and in the 1200 block of Locust Street, who began to watch both the defendant and B.L. Houck's behavior, in part, caused B.L. to walk away from the corner of 12th and Locust Streets and head toward the entrance to the Clinic. As B.L. was returning to the PPC, the defendant approached B.L.,

touched B.L.'s back, which caused B.L. to turn around, and the defendant forcefully pushed B.L.'s chest with both of his hands and caused B.L. to hit the ground and injuries.

## II.     ELEMENTS OF THE OFFENSES

The elements of 18 U.S.C. § 248(a)(1) are as follows:

1.  The defendant used force;

2.  The defendant intentionally injured, intimidated, and interfered with B.L., or attempted to do so; and

3.  The defendant acted because B.L. was a provider of reproductive health services.

A FACE Act violation is a misdemeanor offense except in the case where a charged defendant has a prior FACE Act conviction or the offense results in bodily injury or death, which enhances the offense to a felony violation. Here, Count Two of the indictment alleges that B.L. suffered bodily injury, which is a fourth element of a Section 248(a)(1) that the Government must prove beyond a reasonable doubt. 18 U.S.C. § 248(b).

The FACE Act further provides statutory definitions, under subsection (e), including:

(i)  Interfere with – means to restrict a person's freedom of movement;

(ii) Intimidate – means to place a person in reasonable apprehension of bodily harm to him- or herself or to another;

(iii) Reproductive health services – means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services related to pregnancy or the termination of a pregnancy.

Although the FACE Act does not define "force," courts have held that force within the meaning of the statute is "not limited to violent or assaultive force." *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, (S.D.N.Y. 2006) (internal quotation marks and citation omitted); *Allentown Women's Center, Inc. v. Sulpizio*, 403 F.Supp.3d 461, 467-68 (E.D. Pa

2019) (employing *Cain's* definition of force but holding that the use of force alleged differed from the facts of *Cain*). Notably, "force" includes "de minimis contact." *Id*.

Moreover, the FACE Act does define "who" is a provider of reproductive health services. However, case law has established that volunteers and employees at an abortion clinic are considered "provide[rs of] reproductive health services." *United States v. Dinwiddie*, 76 F.3d 913, 926-27 (8th Cir. 1996); *see also, United States v. Scott*, 187 F.3d 282, 285 (2d Cir. 1999) ("clinic escorts provide[d] reproductive health services.").

### III.  APPLICABLE LAW

As explained below, the evidence relating to Houck's first assault on B.L. in May is directly relevant to the allegations in Counts One and Two of the indictment because such evidence shows that Houck was motivated to assault B.L. because of B.L.'s role at PPC. Accordingly, such evidence is clearly relevant under Fed. R. Evid. 402, since it is obvious and direct evidence of the defendant's motivation and intent. Such evidence is admissible under Rule 404(b) because: (a) it is being offered for a non-propensity purpose: i.e., to show Houck's motive and his intent to interfere with B.L. because of the victim's service to the PPC; (b) the evidence is relevant to the non-propensity purposes; (c) its probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403; and (d) the Court may give a limiting instruction.

Rule 404(b) permits admission of evidence about a defendant's uncharged bad acts when offered to illuminate some fact of consequence in the case, and forbids admission of evidence proffered only to prove the defendant's criminal propensity. *See Huddleston v. United* States, 485 U.S. 681, 686 (1988) (a proper purpose is one "probative of a material

issue other than character"). Courts in the Third Circuit follow the four-part test set forth in *Huddleston* in determining the admissibility of Rule 404(b) evidence. Specifically, *Huddleston* requires the following: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) the prejudicial impact must not substantially outweigh its probative value; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted. *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)). Here, the proffered evidence regarding the defendant's May assault against B.L. while and because B.L. was providing reproductive health services satisfies all of the requirements of *Huddleston* and a limiting instruction is more than adequate to protect the defendant against any unfair prejudice.

      A.      <u>The Evidence Has a "Proper Purpose"</u>

Rule 402 of the Federal Rules of Evidence states, in part, "All relevant evidence is admissible, except as otherwise provided by law." Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Third Circuit has stated that "[t]he definition of relevant evidence is very broad . . . Rule 401 does not raise a high standard." *Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532, 544-545 (3d Cir. 2007) (internal quotations and citations omitted). Facts of consequence are not restricted to the essential elements of the charged offense. To establish relevance, the party offering the evidence is required only to provide a reasonable explanation of how the evidence makes a fact of consequence more or less likely. Relevance under Rule 401 is not a competition between possible explanations of the evidence's

significance. That a party contesting admissibility may be able to supply an alternate explanation of the evidentiary significance of the evidence does not affect this determination. *See Old Chief v. United States*, 519 U.S. 172, 179, 184 (1997) (an alternative explanation of the nature of the contested evidence is not germane to the relevance determination under Rule 401); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921 (3d Cir. 1985) ("evidence need not lead inescapably towards a single conclusion to be relevant[;] it need only make certain facts more probable than not."). Resolving conflicting explanations of evidence is for the jury. *See DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978) (alternate explanations go to weight, not admissibility).

While Rule 404(b) bars offering evidence to merely show so-called "propensity," the rule places no limitations on proper non-propensity purposes. The Third Circuit has alternately referred to Rule 404(b) as a rule of "inclusion," *see, e.g., United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003); *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994), and a rule of "exclusion." *See, e.g., United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014); *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014). In 2017, the Court sought to reconcile these competing statements by stating: "In sum, Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d at 241. *See also United States v. Daraio*, 445 F.3d 253, 256-57, 264-66 (3d Cir. 2006) (defendant convicted of evading payroll taxes between from 1994 through 1998; district court did not err in admitting evidence that the defendant previously failed to comply with the tax laws in 1984,

1989–1993, 1999-2004 to show intent). The purposes for which such evidence may be offered are not limited to those listed in the rule. *See, e.g., United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988) (relevant evidence can be admitted for any reason, "so long as it is used for a purpose other than proving a defendant's likelihood to have committed this particular crime based on an inference drawn from evidence pertaining to his character.").

The first step in the Supreme Court's *Huddleston* test is to determine if the evidence is offered for a proper purpose. Specifically, "the proponent must identify a proper purpose for admission (such as knowledge or intent) that is 'at issue' in, or relevant to, the case." *United States v. Caldwell*, 760 F.3d at 276. Rule 404(b) itself enumerates several permissible purposes, providing that "[e]vidence of a crime, wrong, or other act . . . may be admissible for another purpose, such a proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2).

The defendant's initial assault of B.L. while B.L. was providing reproductive health services on May 26, 2021, has a proper evidentiary purpose under Rule 404(b). On this date, PPC patients turned over to B.L. pro-life literature that they had received from defendant which they did not solicit or want. The defendant attempted to retrieve the literature and took three to four steps from the sidewalk onto the Clinic's private property. When B.L. blocked the defendant in PPC's courtyard, the defendant pushed B.L. on the chest. This evidence demonstrates that Houck's targeted use of force against B.L. was motivated over B.L.'s role in providing reproductive health services by assisting patients. Houck's assaultive behavior on May 26, 2021 is therefore probative of his intent and motive in renewing his assault on the same victim on October 13, 2021, when again B.L. was

providing reproductive health services. The evidence also proves the defendant's knowledge that B.L., who, on both May 26, 2021, October 13, 2021, and other dates, always wore a brightly colored vest and was known to be a volunteer patient escort and provider of reproductive health services to patients at PPC.

Critically, the defendant is charged with specific intent crimes. Accordingly, for the government to meet the burden of proof required to establish the defendant's guilt, it must show that the defendant had the requisite intent to injure, intimidate, and interfere with B.L. and that he did so because B.L. was a provider of reproductive health services. These are "material issues and facts the government must prove to obtain a conviction." *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992).

Furthermore, the defendant will almost certainly attempt to confuse the jury or cloud the evidence of Houck's intent at trial by suggesting alternative reasons for his assaultive behavior. In the Rule 404(b) calculus, facts "of consequence" supporting admissibility include facts that are relevant to reasonably anticipated defenses. *See United States v. Kemp*, 500 F.3d 257, 296-97 (3d Cir. 2007) (finding evidence disproving defendant's claims of wealth were admissible where defendant sought to negate his motive by making claims of great wealth). "Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense." *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007) (defendant accused of soliciting sex from a minor; government may impeach defendant's expected defense that he believed the minor was an adult posing as a young teenager); *United States v. Nevels*, 490 F.3d 800, 804-06 (10th Cir. 2007) (crime scene testimony from homicide detective introduced to rebut defenses of

justification and self-defense); *United States v. Brown*, 276 F.3d 211, 218 (6th Cir. 2002) (defense suggestion that lack of fingerprints was significant opened door to evidence explaining why no fingerprints were found); *United States v. Murillo*, 255 F.3d 1169, 1177 (9th Cir. 2001) (expert testimony about drug-courier/drug-trafficker methods of operation admitted to counter defense that defendant was unknowing courier); *United States v. Burdeau*, 168 F.3d 352, 357 (9th Cir. 1999) (FBI testimony regarding rarity of fingerprints in bank robbery cases); United States v. Hooker, 997 F.2d 67, 77 (5th Cir. 1993) (large purchases admissible to rebut entrapment defense, demonstrate motive to possess firearms, provide basis to infer drug trafficking); *United States v. Goodapple*, 958 F.2d 1402, 1407-08 (7th Cir. 1992) (introduction of prior drug crimes in case-in-chief to rebut entrapment and establish specific intent); *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990) (prior acts evidence in case-in-chief to preempt argument that defendant was falsely accused by cooperating witness).

Here, the government anticipates that the defendant may suggest to the jury that he only forcefully shoved B.L. on October 13, 2021 because he was "defending" his minor son and that his conduct had nothing to do with B.L.'s role providing reproductive health services. Should the defendant pursue this defense through cross-examination of the government's witnesses or presentation of his own evidence, the May assault, during which the defendant's son was not present *and* the defendant used force against B.L., will surely be "material" to the government's proof of the defendant's guilt. *Sampson*, 980 F.2d at 888.

Without providing context for the alleged crimes, the defendant's acts on October 13, 2021, would otherwise appear isolated and based solely on the presence of the

defendant's son. Thus, the defendant's actions on May 26, 2021, are relevant and the very touchstone of relevance. *See* Fed. R. Evid. 401 (Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence."). Accordingly, the entirety of the defendant's interactions with B.L. are relevant to a material issue other than character and should be and may be admitted consistently with Rule 404(b).

      B.      <u>The Proffered Evidence is Relevant to the Stated Purposes</u>

After determining whether the evidence is being offered for a proper purpose, the *Huddleston* framework requires the government to demonstrate that the evidence is "relevant" to the stated purposes. Specifically, the government must establish how the proffered evidence "fits into a chain of inferences – a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Caldwell*, 760 F.3d at 277 (internal quotation marks and citation omitted). The Third Circuit has defined relevance as "a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Sampson*, 980 F.2d at 888. Additionally, a district court conducting a Rule 404(b) analysis must give a detailed account of its findings at this juncture; it is not sufficient for the court to recite the purposes of Rule 404(b)(2). *Caldwell*, 760 F.3d at 277-78.

The evidence of the defendant's prior use of force against B.L. while B.L. was performing his duties as a provider of reproductive health services at PPC is clearly and unequivocally relevant to show the defendant's intent and motivation to use force against

B.L. as charged in the indictment. This first assault, which took place in May 2021, is obviously highly probative of the defendant's state of mind in October 2021, because on both occasions B.L. was providing reproductive health services and the defendant used force against B.L. The defendant's son was not present in May 2021, and not in close proximity to either B.L. or the defendant when the defendant forcefully shoved B.L. in October 2021. Thus, the proffered evidence tends to show that the defendant used force and intentionally injured, intimidated, and interfered with B.L. or attempted to do so, because B.L. was a reproductive health service provider, rather than any other reason.

    C.       The Evidence is Not Unfairly Prejudicial

The third step in the *Huddleston* test is to determine whether the Rule 404(b) evidence's prejudicial impact substantially outweighs its probative value. Rule 403, which applies at this prong of the *Huddleston* analysis, makes clear that exclusion is allowed only if the prejudicial impact of the evidence "substantially outweighs" the probative value. *See* Fed. R. Evid. 403; *see also Huddleston*, 485 U.S. 691 (holding that the 403 balancing test applies under Rule 404(b)). Rule 403 "creates a presumption of admissibility." *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014). "Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value." *Repak*, 852 F.3d at 246 (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)).

"Prejudice" does not mean simply that the evidence is harmful to the defendant's case:

> Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial. Evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note, F.R.Evid. 403.

Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) (emphasis in original). "[T]he prejudice against which [Rule 403] guards is *unfair* prejudice – prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found.'" *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis in original). "Virtually all evidence is prejudicial or it is not material." *Carter*, 617 F.2d at 972 n.14 (quoting *Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977).

The proffered Rule 404(b) evidence does not threaten any "unfair prejudice," and certainly none that "substantially outweighs" that evidence's probative value. The evidence in question does not carry the risk of "cloud[ing] the jury's impartial scrutiny and reasoned evaluation of the facts." Goodman, 293 F.3d at 670.

### D.   Limiting Instruction

Finally, the Court may give a limiting instruction, if the defendant requests it, which advises the jury that the evidence is admissible for a limited purpose and may not be considered in any other manner. *Caldwell*, 760 F.3d at 277. Even if the Court includes such an instruction in its charge, the Court should also provide the instruction at the time the evidence is admitted. *Id*. The government has no objection to this Court issuing such a proper instruction, if requested by the defense.

## IV.    **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that this Court enter an order admitting the evidence since it contextualizes the defendant's alleged criminal conduct and helps to demonstrate his knowledge of B.L.'s role and the defendant's motive and intent to injure, intimidate, and interfere with B.L. because he was a provider of reproductive health services.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

KRISTEN CLARKE
Assistant Attorney General for
Civil Rights Division

*Anita Eve*
_____
ANITA EVE
Assistant United States Attorney
SANJAY PATEL
Trial Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the within government's Motion to Admit Evidence of Other Crimes Pursuant to Fed. R. Evid. 404(b) and Memorandum has been filed and served upon all parties listed on the Electronic Case Filing (ECF) System and is available for viewing and downloading from the ECF system.

*Anita Eve*
_____
ANITA EVE
Assistant United States Attorney

Date: December 5, 2022