**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-323 (GJP)** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK HOUCK,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO VACATE OR MODIFY THE PROTECTIVE ORDER**

The United States of America, by and through its counsel of record, respectfully responds in opposition to the defendant's motion to vacate or modify the Court's protective order.  (ECF No. 81).  The government submits that compliance with the protective order is necessary to assure the privacy and security interests of the victim and witnesses, and protect strong governmental interests against public disclosure of the discovery.  The government respectfully requests this Court deny the defendant's motion.

**Background**

Following the defendant's indictment, the government provided materials in discovery that, among other items, included: grand jury materials, grand jury transcripts, and witness statements documented in FBI FD-302 reports.  Nearly all of that discovery contained sensitive, non-public information gathered in the course of the federal investigation.  The victim and majority of witnesses identified throughout the discovery were reproductive health care providers who are at risk of harassment, intimidation, and violence committed by those who oppose abortion care.

On January 9, 2023, this Court entered the government's unopposed protective order, which concerned the disclosure of these discovery materials for the defendant's use to prepare his

defense against the indictment.  (ECF No. 49).  The protective order required the defendant to destroy or return the discovery materials to the government within 60 days following the conclusion of the proceedings.  *Id*.  Most of that discovery provided to the defendant was never introduced into evidence at trial.  A jury returned a verdict in favor of the defendant.  (ECF No. 70).  Subsequently, the defendant was required to comply with the protective order and either destroy or return the discovery materials.

The defendant now asks this Court to vacate or modify the protective order.  Rather than destroy or return the discovery materials, the defendant intends to use the discovery for reasons not contemplated by the protective order.  The defendant's purported uses include use in potential civil litigation and publication to third parties.  This creates significant privacy and security risks for the victim and witnesses, and violate governmental interests against publication.

## Argument

The government respectfully requests that this Court enforce the protective order for good cause – to protect privacy interests of witnesses and enforce governmental interests in protecting grand jury secrecy and the discovery process. The defendant had the opportunity to object to the protective order at the time of filing, in January 2023, and did not do so. To the contrary, the defendant did not oppose entry of the order – thereby effectively agreeing that the government outlined proper rationale for the entry of such an order, which is consistent with the government's ordinary practice to withhold discovery not presented at trial or any hearing, or included in any public filing.

There is no adverse impact on the defendant by requiring compliance.  The defendant's spoliation concerns are unavailing because the discovery will be preserved by the government, and the defendant can use civil discovery vehicles to obtain permissible discovery under a civil

protective order that will guard against abuse.  Any third-party rights the defendant seeks to assert are unenforceable because the government maintains privileges against public disclosure that are protected by the Freedom of Information Act ("FOIA").  *See* 5 U.S.C. § 552(b).  Moreover, the government has significant interests in generally protecting the criminal discovery process.

## I.     THE GOVERNMENT'S REQUEST FOR A PROTECTIVE ORDER WAS FOR GOOD CAUSE AND UNOPPOSED BY THE DEFENDANT.

Following the defendant's indictment, the government moved for a protective order to protect the privacy interests of the victim – Bruce Love - and witnesses identified in the discovery materials, none of whom were identified in the indictment.  (ECF Nos. 1, 35).  Importantly, the defendant did not oppose the protective order.

The order states "[t]he defendant shall use discovery material and its contents solely for the preparation, trial, direct appeal (if any), and collateral attack (if any) of this case and for no other purpose whatsoever."  (ECF No. 49).  The order protected against disclosure of the witnesses' personal information, as well as confidential and sensitive information developed through the law enforcement and grand jury investigations.  *Id*., at 4; *see, e.g., Douglas Oil v. Petro Stops Nw.*, 441 U.S. 211, 218-22 (1979) (discussing the policies underlying grand jury secrecy requirements and noting that they remain in effect after the grand jury's proceedings conclude).

The order was contemplated against the backdrop of a publicized prosecution.  Despite the government's practice of not naming Mr. Love in the indictment, the defendant publicly discussed Mr. Love's identity pre-trial in this case, which created a security risk.  In fact, during the pre-trial proceedings, Mr. Love was targeted by individuals from the public with harassment and intimidation.  Talk radio shows and online forums used Mr. Love's name, and his information even appeared on a neo-Nazi website.  In the weeks following the indictment, Mr. Love was attacked online as, among other things, an "old man," an "old fool," a "baby killer supporter,"

"someone suffering from mental health problems," "fucking sick," an "asshole," a "bully prick," a "pro-abortion pervert," and a "Jewish, anti-Christian bigot."  He was told by at least one anti-abortion activist, "we know where you live."  Moreover, one member of the prosecution team in this case received intimidating literature at their home address.

Mr. Love was subjected to repeated attacks before he ever testified at the trial in this case. Consistent with the Crime Victims' Rights Act ("CVRA"), codified under 18 U.S.C. § 3771, the protective order helped insulate Mr. Love and witnesses from any escalation of that conduct because their statements and personal information were kept from public disclosure.  The defendant now seeks to reveal the names of numerous civilian witnesses who appear in the discovery, who were neither mentioned nor testified at trial, subjecting them to the same harassment in a form that will exist in perpetuity.  This is the exact harm that the protective order sought to protect against.

The defendant acknowledges that he consented to the protective order in this case, but now argues that he did so only to avoid a "protracted dispute that would likely delay Defense Counsel's receipt of discovery material."  (ECF No. 81, at 5).  This argument is unpersuasive. The defendant's moment to object to this order and litigate it fully was prior to its entry and disclosure of the materials.  Had the defendant objected to the protective order, the government would have provided additional information related to the threats and security concerns surrounding this case. Moreover, had the Court not granted the protective order, the government could have withheld the discovery materials that implicated the interests at issue, and allowed inspection in our office where the materials would be protected.

The defendant now must comply with the requirements of the protective order and destroy or return the discovery, as is required by the order: "Upon notification and direction by the United

4

States to defense counsel within 60 days following the conclusion of these proceedings . . . the discovery material disclosed by the United States and any duplications made for the preparation, trial, direct appeal (if any), or collateral attack (if any) of this case shall be returned to the United States or destroyed by the defendant, unless the Court (or the Government) gives specific written permission for an exception to this requirement."  (ECF No. 49).

The defendant's reliance on *United States v. Wecht*, 484 F.3d 194 (3d Cir. 2007), for the proposition that the government failed to demonstrate "good cause" for the entry of the protective order is misplaced.  (ECF No. 81, at 4-5).  The government demonstrated good cause and this Court appropriately granted the unopposed motion and entered the protective order.  Also, the *Wecht* court explained that although "the burden of justifying the . . . protective order remains on the party seeking the protective order," the same "reasoning applies with equal force when a non-party moves to intervene . . . for the limited purpose of modifying a protective order and inspecting documents filed under seal."  *Wecht*, 484 F.3d at 211.  Here, although the defendant is a party, he should be required to meet this standard because he is asserting third-party interests to access the discovery.  Moreover, *Wecht* concerned documents that were court records and not, as here, portions of discovery that is not part of the court record and given to the defendant under an unopposed protective order.

Subverting the order now will irreparably harm the victim and witnesses, and significantly impact governmental interests.  The defendant appropriately used the discovery to successfully defend himself against the indictment, and this is where his permissible use of the materials should end.  This Court should enforce the protective order and require the defendant to comply with its terms.

## II.      THE DEFENDANT'S SPOILATION ARGUMENT IS MERITLESS

The defendant argues that the risk of governmental spoliation will adversely affect any future civil claims he may assert.  This argument is meritless because the United States is required by law to maintain the discovery materials pursuant to 44 U.S.C. § 3301 *et seq*.  Should the defendant assert any future civil claims related to his prosecution, he may use civil discovery tools to obtain the relevant discovery materials.  The discovery would then be governed by a related civil discovery protective order that will provide a court with jurisdiction to prevent any potential abuse of that process, which this Court would lose if the defendant's motion is granted.

Therefore, the defendant's preservation concerns are without merit and enforcement of the protective order is appropriate here.

## III.      STRONG INTERESTS IN THIS CASE SUPPORT COMPLIANCE WITH THE PROTECTIVE ORDER

Compliance with the protective order is further appropriate to protect the privacy of witnesses and to maintain the secrecy of materials derived from the grand jury investigation. Relatedly, as will be addressed further below, there is no countervailing public right of access to the discovery materials.

Rule 16(d)(1) of the Federal Rules of Criminal Procedure provides: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  The 1966 Advisory Committee stated:

> This subdivision gives the court authority to deny, restrict or defer discovery upon a sufficient showing.  Control of the abuses of discovery is necessary if it is to be expanded in the fashion proposed in subdivisions (a) and (b).  Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals.

The Supreme Court shortly thereafter confirmed that "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).

The circumstances of this case provide more than "good cause" for compliance with the protective order entered by the court. This applies in gross to all materials not admitted at trial or made part of the judicial record.

### 1. Compliance with the protective order is necessary to protect the privacy interests of the victim and witnesses

Destruction or return of the discovery to the government will protect significant privacy interests of the witnesses. As discussed above, publicity of the defendant's prosecution created a security risk for Mr. Love. He was subjected to on-line harassment and intimidation that caused him to retain legal counsel to ensure that his privacy was protected. The vast majority of the discovery protected by the existing order involved witnesses who *did not* testify at trial in this case.

For instance, prior to trial, the government indicated its intent to cross exam the defendant's proposed character witnesses about two prior assaults committed by the defendant. One of those incidents occurred at the Philadelphia Planned Parenthood ("clinic") a month after the charged offenses, and was witnessed by four clinic escorts.[1]

The FBI conducted a full investigation of this incident, and the contents of that investigation were included in the discovery provided to the defendant. As part of this investigation, FBI took statements from those four clinic escorts who witnessed the attack. Those individuals were not mentioned at trial, and their information has not been publicized in any way.

---

[1] This incident is separate from the Rule 404(b) evidence the government sought to introduce at trial. *See* ECF Nos. 20, 28, 53.

Given that these witnesses were also clinic escorts like Mr. Love, there is every reason to believe that they will be subjected to the same kind of harassment that Mr. Love has experienced.

As the Court saw from the FBI FD-302s marked by the defendant as potential trial exhibits[2], the discovery details the personal information and statements of the victim and many witnesses. The discovery materials contain highly sensitive information regarding the polarizing issue of reproductive health care, and any dissemination or disclosure of these materials by the defendant creates a significant privacy risk for these individuals. The victim and witnesses did not choose to participate in the criminal prosecution, but were required to by law; and publicizing their private identities and statements would be detrimental. Because the large swath of discovery that is not part of the trial record is maintained in law enforcement files, it is not publicly available and there is no general public right of access to them. Compliance with the protective order will ensure that the witnesses' privacy interests are secured, and minimize any safety risk posed by the defendant's uncontrolled use or public disclosure of the discovery.

Any claim by the defendant that he will redact sensitive information provides no assurance that the witnesses' private information will be safeguarded. The publicity this case has received created a safety risk for Mr. Love. Should this Court grant the defendant's motion, it loses jurisdiction over any potential abuses committed by the defendant or third-parties with whom he shares the discovery. Enforcement of the current protective order is necessary to prevent this from occurring.

Furthermore, the CVRA favors compliance with the protective order. The CVRA protects victims from the accused, and affords them the right to be treated with fairness with respect for their dignity and privacy. 18 U.S.C. § 3771(a)(1) and (a)(8). *See United States v. Torres*, No. 20-

---

[2] These FD-302s were not admitted at trial and not part of the trial record.

cr-418, 2020 WL 4500046, at 4 (D.N.J. Aug. 5, 2020) (Courts around the country have relied on the CVRA to find good cause for entry of protective orders).

In this case, Mr. Love has reported to the government his significant safety concerns should the defendant's motion be granted.  Following the defendant's indictment, Mr. Love was doxed[3] despite the government's attempt to protect Mr. Love's privacy by referencing his initials.  He was subjected to on-line attacks and threats, which forced him to retain private counsel.  In the weeks following the defendant's acquittal, the case received significant media attention, which resulted in further doxing.  To protect both Mr. Love and the witnesses' privacy and safety, the protective order should be enforced.  If the defendant's motion is granted, this Court will lose jurisdiction to address any potential abusive use of the discovery.

Accordingly, compliance with the protective order is necessary to protect the victim and witnesses' privacy.

### 2.   Compliance with the protective order is necessary to maintain secrecy of grand jury materials

Witness testimony and a significant portion of the discovery materials were obtained by the grand jury during its investigation of the charged offenses.  The profound interest in grand jury secrecy counsels against unnecessary disclosure of grand jury materials that the government is otherwise obligated to provide to defense counsel in a pending case.  *See Douglas Oil*, 441 U.S. at 218-19, & 218 n.9 ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye . . . . The rule grand jury secrecy was imported into our federal common law and it is an integral part of our criminal justice system.").

---

[3] Mr. Love's private information was maliciously published on the internet.

Compliance with the protective order is necessary to protect the witnesses' constitutional and statutory privileges applicable to grand jury proceedings. The government has an interest in protecting against the publicizing of information that could be damaging to reputation and privacy, and any abuse of the grand jury process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984). This Court is in the best position to fairly weigh the competing needs and interests of parties affected by discovery and enforce protective orders to protect against any abuses of the discovery process. *Id*.

Moreover, as discussed more fully below, grand jury materials are not available to the public under the Freedom of Information Act ("FOIA"), and permitting the defendant to maintain possession of grand jury discovery materials would be inconsistent with the provisions of 5 U.S.C. § 552(b).

## IV.   THERE IS NO GENERAL PUBLIC RIGHT OF ACCESS TO DISCOVERY MATERIALS BEYOND THE JUDICIAL RECORD

The defendant further argues that "[t]here is exceptional public interest in this matter," which supports "dissolving or modifying the protective order." (ECF No. 81, at 5). Specifically, he seeks to share the discovery with the with the U.S. House Judiciary Committee and attorneys defending FACE Act defendants in other districts.[4]   However, the defendant cites no case to support his argument that the public has a general right to access criminal discovery beyond materials that are part of the judicial record. To the contrary, Supreme Court and Third Circuit decisions cut against a finding that the public has a broad right to scrutinize discovery materials never made part of the judicial record. Any public interest in records *collateral* to the trial is far outweighed by the danger to the safety and reputation of the victim and witnesses. Thus, there is

---

[4] To the extent any information in the discovery materials is arguably exculpatory to a particular defendant in another district (which is extremely unlikely), the government has an obligation to provide that material in the other case. The defendant has no role in that discovery process.

good cause to enforce the protective order and require the defendant to destroy or return the discovery materials.

Although the Third Circuit has held that in both criminal and civil cases there exists a public right of access to judicial proceedings and records, it has limits that include a right to attend judicial proceedings, and to inspect and copy judicial records and documents. *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The defendant has already released the video of the incident, which was shown at trial and is a part of the judicial record, to media outlets and did so the evening of the verdict in this case. The defendant has also released the Planned Parenthood Escort Manual that was marked as an exhibit at trial. Both items have been republicized by third-party organizations on numerous platforms. The defendant has further ordered the trial transcripts, and is free to share them with whomever he pleases.

The materials at issue here, however, are not judicial records. Rather, they are prosecution materials that were not made part of the judicial record, and held exclusively in the government's law enforcement files and by the defendant pursuant to the protective order. Nearly all of the discovery in the defendant's possession was never submitted to this Court for review or litigation.

The absence of a general public right to criminal discovery is supported by the Supreme Court's decision in *Seattle Times*, where the Court stated there is no public right to access discovery under the First Amendment because this process has traditionally not taken place in public. 467 U.S. at 32. Although *Seattle Times* involved civil discovery that occurred with the participation of counsel, a criminal investigation by contrast usually occurs ex parte, as government agents conduct interviews and prosecutors examine witnesses before the grand jury outside the presence of counsel; and prosecutors have authority to broadly subpoena the production of any records that may be considered useful by an inquisitive grand jury. There is a greater

possibility in the criminal context that government files will contain extraneous or prejudicial materials that may never see the light of a trial.  Thus, the Supreme Court's conclusion in *Seattle Times* is even more compelling in a criminal case:

> There is an opportunity . . . for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy.  The government clearly has a substantial interest in preventing this sort of abuse of its processes . . . . The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery.  The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.*, at 35-36.  Most importantly, this Court can rely on *Seattle Times* to find that the absence of any public right is offset by the strong interests served by the protective order.

In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), the Third Circuit held that a settlement agreement ending civil litigation was not a judicial record subject to a common law right of access, because the document "was never filed with, interpreted or enforced by the district court."  *Id.*, at 781.  This Court can glean from both *Pansy* and *Cendant Corp* that the same is true of the discovery materials in this case, where the only admitted records included the video evidence, stills from the video, photographs, and related clinic documents.  No FBI FD-302, grand jury transcript, or majority of the other discovery materials were admitted at trial, and to which no right of public access exists.  These cases support the proposition that the right to public information does not extend to criminal discovery that was neither submitted to the court for adjudication nor admitted at trial.

Should this Court grant the defendant's motion, it would lose jurisdiction to hold him accountable for any abuse.  Thus, the defendant's motion should be denied, precluding him from sharing the discovery with third-parties.

## V.      STRONG INTERESTS IN CRIMINAL DISCOVERY GENERALLY SUPPORT ENFORCEMENT OF THE PROTECTIVE ORDER

There are stronger interests in the criminal context that provide ample "good cause" for this Court to enforce the current protective order, which are not offset by the defendant's own interest in using the materials in affirmative civil litigation, or any public right to inspection. Balancing the interests here requires the defendant to comply with the protective order he did not oppose, and destroy or return the discovery materials to the government. This is consistent with the government's ordinary practice to not publicly disclose discovery that was not admitted at a trial or any hearing, or included in any public filing.

In the civil context, most notably in the *Pansy* decision cited by the defendant, the Third Circuit suggested a more rigorous discovery review, which arguably sets a higher bar for protective orders and favors item-by-item review of particular documents subject to an order. These decisions should not be applied in the criminal context. *Pansy* itself did not even involve the discovery process, but rather whether a court should enter a confidentiality order preventing public access to a settlement agreement at the conclusion of a civil case. In rejecting the protective order, the Third Circuit in *Pansy* was most influenced by the fact that the settlement agreement was available to the public under the "Pennsylvania Right to Know Act." *Pansy*, 23 F.3d at 784. The Court held that good cause was not established to enforce the related confidentiality order, largely because of the conflict with the state's freedom of information law. *Id.*, at 791.

The circumstances in the instant case are different because this issue pertains to criminal discovery materials that exceed those made part of the judicial record. *Seattle Times*, 467 U.S. at 35-36. Moreover, the FOIA Act, specifically § 552(b)(3) and (b)(5)–(b)(7), limit the public's access to much of the discovery materials. Providing the defendant unrestricted use of the

discovery to publicly share with third-parties would invade the privacy interests of many people, and violate governmental interests that the defendant could not be held accountable for.

Accordingly, it is clear that *Pansy* involved situations quite remote from that at issue here. This case, and criminal cases generally, present additional interests of profound importance that were not considered in *Pansy*. Most notably, the need to protect the confidentiality of criminal investigations and grand jury inquiries. Those significant interests clearly favor enforcement of the protective order here without the burdensome inquiry envisioned in *Pansy*.

Cases that involve criminal discovery are unanimous in following this reasoning. For instance, in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), the Court held that that the need to prevent government compulsion in a criminal investigation from invading privacy interests favors the sealing of evidence. *Id.*, at 305. "Minimizing the initial intrusiveness of necessary governmental activity is one means of serving fundamental privacy interests, but controlling broadside disclosure of materials or information obtained by intrusive means is another." *Id*. The D.C. Circuit considered a variety of factors, including the strength of the privacy interests involved, the absence of previous public access to the documents, and the possibility of prejudice to defendants who had not been tried. *Id.*, at 318-322.

The interests at stake in the present case are similar. Most of the discovery materials in the defendant's possession were not admitted at trial or made part of the judicial record. If the defendant is not required to comply with the protective order that he did not oppose, then the vast quantity of materials will result in a wholesale publication of information that must remain confidential. The *Hubbard* court concluded: "Given all the factors discussed above we conclude that on the present state of the record the seal on the documents at issue here should not have been lifted, and should continue unless on remand some substantial factors are identified which weigh

14

in favor of public access to particular documents." *Id.*, at 322.  In other words, the court endorsed

a presumption exactly opposite to that applied to civil records in *Pansy* – the *Hubbard* court found

a presumption that materials seized in a criminal investigation should remain under seal, absent a

particular showing supporting disclosure of any individual item.  *Id.*, at 323.

**VI.    CONCLUSION**

For the reasons set forth above, the government respectfully requests that this Court deny

the defendant's motion and order him to destroy or return the discovery.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Sanjay Patel*
SANJAY H. PATEL
Trial Attorney, Civil Rights Division

ASHLEY N. MARTIN
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

     SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the defendant.

DATED: February 24, 2023                 *_/s/ Sanjay H. Patel_*
                                             Sanjay H. Patel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 22-cr-323 (GJP)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **MARK HOUCK,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## ORDER

**AND NOW**, this ____ day of _____2023, after reviewing the

submissions by the Government and defense counsel, and a hearing on this matter;

It is hereby **ORDERED** that the defendant's motion to modify or dissolve the

protective order is **DENIED**.

**BY THE COURT:**

_____
**THE HONORABLE GERALD J. PAPPERT**
United States District Court Judge